TAMI DEWELL JAMES
En Pro Se
17639 Crabapple Way
Carson, CA 90746
Telephone: (310) 962-1711
Fax:    (310) 603-9653
*trbsmile1968@yahoo.com*

FILED

2013 JUL 19 PM 2:25

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMI DEWELL JAMES | CASE NUMBER: |
| Plaintiff | CV13-5240 GAF-VBK x |
| Vs. | |
| ONELEGACY | COMPLAINT |
| Defendant(s) | DEMAND FOR JURY TRIAL |

I.   PARTIES TO THIS COMPLAINT

A. *PLAINTIFF* – Tami Dewell James is an individual and resides in Los Angeles County.

B. *DEFENDANT* – OneLegacy is a Federally funded Non-Profit Organization conducting business in Los Angeles County.

PAID
JUL 19 2013
Clerk, US District Court
COURT 4612

## II. JURISDICTION

    A. THIS COURT HAS JURISDICTION UNDER 28 U.S.C § 1331, § 1343 and Article III, Section 1.

    B. Plaintiff holds a "notice of Rights" letter from the EEOC dated 6/19/13; identifying Title VII rights, which include filing suit in federal court.

## III. VENUE

    A. Venue is proper pursuant to 28 U.S.C § 1391 because the event giving rise to this complaint happened in this district, and the Plaintiff resides in this district and Defendant conducts business in this district.

## IV. STATEMENT OF FACTS

    This is a case where an accomplished, decent, hard-working and dedicated career woman was treated as though the Fair Employment and Housing Act, the Civil Rights Act of 1964 & Title VII did not exist.

    Plaintiff, while under duress; was forced to sign a Mutual binding arbitration agreement 1 month prior to her wrongful termination in January 2011.

COMPLAINT

Acting En Pro Se, Plaintiff encountered what appears to be a biased arbitration process; the timeline of events in the Arbitrator's final award document is not consistent with witness testimony. **Witness perjury and Factual evidence presented, was overlooked and witness testimony was not considered.** The arbitrator failed to acknowledge and/or comment on the factual evidence presented that **Mr. Garimella, COO; broke Federal Law when he told Plaintiff in an email that, "I'm going to kill you".** Additionally, the Arbitrator made what appears to be a biased decision about behavior that was clearly sexual harassment, instead labeling it as "office humor" and not considered sexual harassment.

Plaintiff was recruited by OneLegacy, Defendant and was a successful Operations Manager and according to OneLegacy, had an outstanding performance record. Plaintiff had an outstanding performance record; until the discriminatory, racist remarks and sexual harassment started in 2010 after she began dating an African-American man.

A. Plaintiff was recruited by Defendant and began her employment with them on November 17, 2008.

B. Plaintiff had an exceptional performance record during her tenure with OneLegacy.

COMPLAINT

3

C. In January 2010, Plaintiff began dating and African-American man.

D. After learning that Plaintiff was dating an African-American, **Plaintiff's Manager; Prasad Garimella, COO of OneLegacy stated directly to Plaintiff; "nothing good ever comes from being with a black man."** This statement is in violation of the Civil Rights Act of 1964 & 1991 Title VII and the Fair Employment and Housing Act (FEHA).  Mr. Garimella made this comment to Plaintiff during a standard "one-on-one" management meeting in Mr. Garimella's office early 2010.

E. Plaintiff was subjected to ongoing racist and degrading remarks about her African-American boyfriend, to whom; she is now married to. Plaintiff went so far as to tell her Colleagues that she was no longer dating her boyfriend in hopes it would improve her working environment with her Manager, Mr. Garimella, COO.

F. Plaintiff was forced to endure sexual charged statements by her Manager and her Male Colleagues.

   i. One such comment by Mr. Garimella was about other females at OneLegacy, an IT Administrative Assistant, he said, **"she's**

ii. **really hot and I'd like to have her long legs wrapped around me"**.

iii. Another topic of conversation in the presence of the Plaintiff was **Mr. Garimella stating, "I like large women because I like to have something behind to grab on to"**.

iv. In March or April 2010, while Plaintiff was winding down divorce preceding's of a 17 year marriage, Mr. Garimella told Plaintiff about a conversation he and the other male managers had about her, **he stated to Plaintiff directly, "the guys were talking about who would take one for the team, because we thought if you got a little, it may relax you a little bit" "Jesse decided to stand up to take one for the team"**.

v. On several occasions, Mr. Garimella stated to the other Male Managers, while in the presence of the Plaintiff; **"Jenna is very masculine and she wears the pants and she probably straps one on and gives it to Jesse"**. (Jenna, Training and Education Manager is married to Jesse, Recovery Manager)

vi. Aaron Cohen, Operations Manager, who is biracial (mother is African-American,

father is caucasion), while in the Plaintiff's office; **informed the Plaintiff that he refers to himself as black "only from the waist down."**

G. Mr. Garimella, COO would make statements to the Plaintiff about her personal life and tell her, "you need to focus on your career and yourself and you should just date yourself right now."

H. In or about July 2010, **Plaintiff complained to Alan Cochran, Vice President, Quality Systems and specifically talked with him about Mr. Garimella and told him "there is inappropriate behavior going on."** Despite the communication in July, nothing was ever done to investigate, nor prevent any further harassment. Plaintiff's working environment grew worse.

I. In late July 2010; Plaintiff required a medical leave due to surgery. Mr. Garimella called Plaintiff the day before she was scheduled to begin her medical leave and threatened her job. He stated to Plaintiff, "you should take these two weeks while you are off to think about your job and if you want to continue doing this work."

J. Following Plaintiff's return and increased hostility in the workplace; **Plaintiff sent**

COMPLAINT

6

written complaints to Mr. Garimella, COO on August 6, 2010. In her complaint, the Plaintiff outlined the discriminatory behavior, including the sexually charged and hostile work environment and the racially derogatory comments made against black men. There was no investigation made, the only acknowledgement or reference made to her complaint was by Mr. Garimella, COO who stated to the Plaintiff, "I can't believe you put that in writing."

K. In December of 2010; while under duress and in fear of losing her job; Plaintiff was forced to sign a Mutual Binding Arbitration Agreement. This arbitration agreement is in direct violation of US Human Rights Article 8.

## PROCEDURAL HISTORY

On May 26, 2011, Plaintiff, Tami Dewell filed a complaint against OneLegacy with the California Fair Employment and Housing (DFEH). The complaint arose out of Dewell's employment as a Family Care Center Manager at OneLegacy. The nature of the complaint included Unlawful Employment Practices and Human Rights Violations:

1) Sexual Harassment in violation of the Fair Employment and Housing Act and the Civil Rights Act of 1964 & 1991 Title VII.

2) Wrongful Termination in violation of the Fair Employment and Housing Act

3) Retaliation / Failure to Prevent Retaliation in violation of the Fair Employment and Housing Act and the Civil Rights Act of 1964 & 1991 Title VII.

4) Associational Discrimination (race/color) in violation of the Civil Rights Act of 1964 & 1991 Title VII and the Americans with Disabilities Act (ADA) (protected class).

5) Human Rights Violation and Emotional Distress in violation with the Fair Employment and Housing Act, the Civil Rights Act of 1964 & 1991 Title VII, Specifically Article 5 & Article 8.

The complaint sought compensatory and punitive damages as well as a letter of recommendation.

On June 20, 2011, Plaintiff filed a demand for arbitration with JAMS. The DFEH closed the case due to her immediate request for a right-to-sue notice with the US Equal Employment Opportunity Commission.

On August 25, 2011, Plaintiff was interviewed by the EEOC and a formal charge was filed. The matter

proceeded to Arbitration with JAMS with the commencement of the Discovery process in October 2011.

On March 26, 2012, the EEOC initiated communication to Plaintiff identifying the Investigator assigned and issued an EEOC charge number of 480-2011-02488.

The discovery process was lengthy ending with the Plaintiff filing a Motion to Compel production of documents on January 18, 2013. The matter came before the arbitrator for hearing on February 11, 12 & 13, 2013. Both sides in writing submitted final summation. The arbitrator served the Interim Award on April 21, 2013 and served the Final Award on May 13, 2013 finding in favor of the respondent on all issues.

### Procedural History FACTS:

A. **IT IS A FACT THAT PLAINTIFF SUBMITTED HER COMPLAINT ABOUT SEXUAL HARRASSMENT 6 MONTHS BEFORE SHE WAS TERMINATED. THE INCIDENCES OF SEXUALLY CHARGED COMMENTS AND RACIST REMARKS WERE BROUGHT FORTH TO DEFENDANT 6 MONTHS BEFORE HER TERMINATION.** Obviously, Mr. Garimella, COO convinced the Arbitrator that he didn't read the August 6, 2010 email from Plaintiff. The Fact is Mr. Garimella did receive and read the email, which included sexual harassment claims in writing. Mr. Garimella was off work and at the

Zoo with his family when he read it.  Mr. Garimella shared this information with Plaintiff during a mtg. in late August while Ms. Handy left the room for a couple of minutes, enough time for Mr. Garimella to lean over his desk and tell the Plaintiff, "I can't believe you put that it in writing", "I was at the zoo with my family and it ruined my weekend."  This fact was corroborated by Mr. Garimella's own testimony during his sworn deposition as well as the hearing testimony with the arbitrator. (Tr. 273-276, Deposition pg. 73-75)

B. As most women who have had to tolerate sexual harassment in the workplace are, Plaintiff was afraid to report the inappropriate behavior. *(Sworn deposition of Plaintiff pg. 103 line 16-25, pg.104 line 1-25, pg.105 line 1-5, pg.134 line 11-25, pg.135 1-25, pg.136 1-23)*

C. **ALL WITNESSES WERE PAID WITNESSES.  AS ONELEGACY EMPLOYEES, THEY AGREED TO AND SIGNED A GENERAL RELEASE FORM IN EARLY 2012 THAT STOPPED THEM FROM SAYING ANYTHING "DISPARAGING" ABOUT ONELEGACY.  As part of the Award (aka Teamwork Award) for signing the release, all witnesses received a 10% bonus based on their 2011 income.** (Tr. 2/11/13:  pg.13, 30, 69, 99, 141, 150, 173, 359)

D. Diane Green, who resigned from OneLegacy shortly before this arbitration hearing "did not feel comfortable testifying as a "witness" during the hearing because "**as an agreement of her package, she signed a waiver and agreed to not say anything "disparaging" against OneLegacy**". Ms. Green was previously deposed and was on Plaintiff's witness list.

E. Witnesses testified that Plaintiff was not known to exaggerate or to not tell the truth. (Depositions; Bravo pg.7; Handy pg.8, Graciano pg.8, Seto pg.7, Cohen pg.21, Cochran pg.7)

F. **The fact of witness perjury was ignored and not factored into the outcome of this arbitration.**

The following Witness' perjured themselves during their depositions, as they all stated they had not interviewed or talked with anyone about the claims when in fact they ALL had been interviewed by Anita Corliss, VP of HR and/or were present during a mtg. w/ the CFO whereby, these claims were discussed. Gloria Handy (Deposition pg. 7, Resp. Exs. 137 & 138). Aaron Cohen (Deposition pg.8, Resp. Exs. 137 & 138). Alan Cochran (Deposition pg.7, Resp. Exs. 137). Tom Seto (Deposition pg.7, Resp. Exs. 138). Jesse Bravo (Deposition pg. 7, Resp. Exs. 138). Jenna Graciano (Resp. Exs. 138).

COMPLAINT

11

G. In arbitrator's Final Award, pg. 3 lines 7-9, Arbitrator states, "<u>By 2010</u> the witnesses stated to the arbitrator that Ms. Dewell worked less hours and seemed to pull away from actively participating in her job". By 2010, indicates prior to and leading up to 2010. **This is not in line with witness testimony.** Blanca Cohen – <u>Fall 2010</u> (Tr. Pg. 56 line 10-13) Aaron Cohen – <u>July 2010</u> (Tr. Pg. 122 line 18-25) Jenna Graciano – <u>Summer 2010</u> (Tr. Pg. 179 line 1-3)

H. In arbitrator's Final Award, pg. 3 line 24-25, he states, "She also acknowledged she was working less hours and was not able to be as productive as she had been in the past. **This is not in line with my testimony.** *(Sworn deposition of Plaintiff pg. 94 line 21-25, pg. 95 line 15-25, pg. 96 line 1-13, pg. 125 line 9-19, pg. 126 line 1-25, pg. 127 line 1-18)*

I. In arbitrator's Final Award, pg. 4 line 1-4, he states, "On august6, 2010, Ms. Dewell sent another email to Garimella. He testified he receives "hundreds of emails" per day and he does not read all of them…". **This is not in line with testimony.** (Tr. 273-276, Deposition pg. 73-75)

J. Plaintiff suffered from emotional distress as a result of her termination, however, in the Final

Award, it appears the arbitrator took into account only the hair loss. He failed to comment on the other issues, increased severity of Plaintiff's Psoriasis, increased severity of irritable bowel, increased depression and anxiety, heart palpitations and chest pain. *(Sworn deposition of Plaintiff pg.178-183)*

K. Plaintiff was made to feel like a criminal, **when on the day she was terminated, she was not allowed to take her personal belongings with her and was not allowed to speak to anyone. Respondent went through Plaintiff's personal belongings in her office prior to her ability to take them and made copies of documents.** The original documents were never given to Plaintiff, as her personal belongings were boxed for her prior to her arrival on the day she was allowed to return to get them.

L. Respondent testified that no one at OneLegacy, not the CEO, not the VP of HR, not the Manager who assisted the HR Administrative staff in boxing the items, no one knows who made copies of Plaintiff's personal belongings. (depositions and Tr testimony)

M. **In the Final Award, the arbitrator failed to acknowledge and/or comment on the factual evidence presented that Mr. Garimella broke**

COMPLAINT

13

**Federal Law when he told the Plaintiff in an email that, "I'm going to kill you".**

N. The arbitrator classified the following as "office Humor": During the deposition of Tom Mone, OneLegacy CEO, Mr. Mone heard of Mr. Cohen's comment to Plaintiff whereby, he referred to himself "as black, only from the waist down", his penis, **Mr. Mone, CEO responded with, "that's a good line". And again, no disrespect to the Arbitrator, but if he thinks sexually charged comments are "office humor", I, as well as the law disagree.** Women have tolerated "office humor" for years. Plaintiff tolerated it until she couldn't take it anymore because it was never accepted.

O. In the Final Award, pg. 8 & 9, arbitrator quotes the Etter case which determined the court must do the following: 1)in assessing whether a work environment is "hostile" the fact finder must "filter out complaints attaching the "ordinary tribulation of the workplace, such as the sporadic use of abusive language, gender-related jokes and occasional teasing". **Based on the arbitrator's ruling, the following comments, actions, behaviors have been determined as "ordinary tribulation of the workplace, such as**

the sporadic use of abusive language, gender-related jokes and occasional teasing.

- "guys were talking about who would take one for the team, because we thought if you got a little, it may relax you a little bit" "Jesse decided to stand up to take one for the team".

- "Nothing good ever comes from being with a black man."

- "she's really hot and he'd like to have her long legs wrapped around him".

- "liked large women because he likes to have something behind to grab on to".

- "Jenna is very masculine and she wears the pants and she probably straps one on and gives it to Jesse".

- "crazy to go down there because all it was, was full of black people".

- "as black, only from the waist down", his penis, CEO responded with, "that's a good line".

Arbitrator states, "The totality of the workplace must be affected. The conditions of one's employment are altered." The fact remains that Plaintiff's employment was altered and her workplace was affected. **Plaintiff cried out for help in the way**

**she could in August of 2010.   It is fact that in that communication, Plaintiff identified that she wanted to continue to work at OneLegacy and continue to do the work she loved, even though her work environment was hostile.** Plaintiff had dedicated 15 years to her career and had been recruited by the largest Organ Procurement Organization in the nation, by all accounts, she had succeeded in her career and she wanted to continue to succeed.   Where in the law does it require the person on the receiving end of workplace hostility and sexual harassment not want to continue doing the work they love?   Plaintiff's mistake was being TRUTHFUL!

Arbitrator states there is conflict in the evidence as to whether OneLegacy was ever aware of Plaintiff's allegation against Garimella. He also states Garimella turned Ms. Dewell's first email over to HR, therefore; "there is no reason to believe he would not have provided the second email to H.R. if he had known about it."   "People are usually creatures of habit…." Plaintiff absolutely agrees with arbitrator's belief that "people are creatures of habit", this is the reason Plaintiff submitted into evidence copies of random email communication between Mr. Garimella and Plaintiff as well as Mr. Garimella and others to show

his "habit" when it comes to emails and how he, as the COO of the largest OPO in the nation lived and breathed by looking at his emails on his blackberry to keep his pulse on Operations, 7 days a week and all hours of the day/night.

**The "proof" that Plaintiff reported sexual harassment and inappropriate behavior while at OneLegacy is the August 6, 2010 email communication to Mr. Garimella. Mr. Garimella testified that he saw the email and led the arbitrator to believe that he did not read it.** Mr. Garimella read it and told Plaintiff he did and commented to Plaintiff that, "I can't believe you put that in writing".

**There was proven sexual harassment that was ignored. (Tr. Pg. 101 line 17-25, pg. 102)The environment is hostile and is proven by the man at the top, the CEO, who finds it humorous for a Manager to refer to himself as "only black from the waist down".** (Tom Mone deposition pg. 63 line 15-20)


With all due respect to the Arbitrator, the timeline of events in the Arbitrator's final award document is not consistent with witness testimony, the decision was not based on the factual evidence presented in this arbitration.

COMPLAINT

17

During the arbitration hearing, Plaintiff was told by The Arbitrator that she had the right to take the stand and testify and yes, she declined.  This decision was based on the fact that Plaintiff's testimony had already been captured during her sworn deposition conducted by OneLegacy, the initial complaint filed with JAMS and ALL subsequent documents submitted to the Arbitrator during the discovery process *(as acting En Pro Per…all submitted documents included Plaintiff's declaration of truth under penalty of perjury)* it raises the question; did the Arbitrator read Plaintiff's deposition and submitted evidence? For if he had, he would not be able to claim "Ms. Dewell herself never testified to it…".

<u>Is Plaintiff's sworn deposition not considered testimony?</u>

Plaintiff did not accept the severance package offered by OneLegacy (last offer was $69,000) and made the decision to fight against the unlawful employment practices that occurred during her tenure at OneLegacy.  **Plaintiff chose to continue this fight as en Pro Per for two years and at a great deal of out of pocket expense because she has the TRUTH behind her.**

**This case involved witness perjury and has not been handled fairly; it appears from the Final Award documentation, testimony and FACTS were ignored.**

In determining whether harassment is sufficiently severe or pervasive to create a hostile environment, the harasser's conduct should be evaluated from the objective standpoint of a "reasonable person." Title VII does not serve "as a vehicle for vindicating the petty slights suffered by the hypersensitive." Zabkowicz v. West Bend Co., 589 F. Supp. 780, 784, 35 EPD ¶ 34, 766 (E.D. Wis. 1984). See also Ross v. Comsat, 34 FEP cases 260, 265 (D. Md. 1984), rev'd on other grounds, 759 F.2d 355 (4th Cir. 1985).

This objective standard should not be applied in a vacuum, however. Consideration should be given to the context in which the alleged harassment took place. As the Sixth Circuit has stated, the trier of fact must "adopt the perspective of a reasonable person's reaction to a similar environment under similar or like circumstances." Highlander v. K.F.C.National Management Co., 805 F.2d 644, 650, 41 EPD ¶ 36,675 (6th Cir. 1986).[20]

"Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult" (Vinson), 106 S.

COMPLAINT

19

Ct. at 2405), an employer is liable for failing to remedy known hostile or offensive work environments. See, e.g., Garziano v. E.I. Dupont de Nemours & Co., 818 F.2d 380, 388, 43 EPD ¶ 37,171 (5th Cir. 1987) (Vinson holds employers have an "affirmative duty to eradicate 'hostile or offensive' work environments"); Bundy v. Jackson, 641 F.2d 934, 947, 24 EPD ¶ 31,439 (D.C. Cir. 1981) (employer violated Title VII by failing to investigate and correct sexual harassment despite notice); Tompkins v. Public Service Electric & Gas Co., 568 F.2d 1044, 1049, 15 EPD 7954 (3d Cir. 1977) (same); Henson v. City of Dundee, 682 F.2d 897, 905, 15 EPD ¶ 32,993 (11th Cir. 1982) (same); Munford v. James T. Barnes & Co., 441 F. Supp. 459, 466 16 EPD ¶ 8233 (E.D. Mich. 1977) (employer has an affirmative duty to investigate complaints of sexual harassment and to deal appropriately with the offending personnel; "failure to investigate gives tactic support to the discrimination because the absence of sanctions encourages abusive behavior")[27]

In contrast, in Yates v. Avco Corp., 819 F.2d 630, 43 EPD ¶ 37,086 (6th Cir. 1987), the court found the employer's policy against sexual harassment failed to function effectively. The victim's first-level supervisor had responsibility for reporting and

correcting harassment at the company, yet he was the harasser. *Harris v. Forklift Sys., Inc.*, No. 92-1168 slip op. (Nov. 9, 1993), the Supreme Court considered whether a plaintiff was required to prove psychological injury in order to prevail on a cause of action alleging hostile environment sexual harassment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* A unanimous Court held that if a workplace is permeated with behavior that is severe or pervasive enough to create a discriminatorily hostile or abusive working environment, Title VII is violated regardless of whether the plaintiff suffered psychological harm. The Court's decision reaffirms *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 40 EPD ¶ 36,159 (1986).

**V.   CLAIMS**

     A.  Wrongful Termination

     B.  Sexual Harassment

     C.  Retaliation

     D.  Failure to Prevent Retaliation

     E.  Associational Discrimination

     F.  Emotional Distress

     G.  Human Rights Violations

COMPLAINT

## VI.   REQUEST FOR RELEASE

Plaintiff respectfully requests Compensatory Damages & Punitive Damages.

1. Human Rights Violations: $3,000,000

2. Emotional Distress: $2,582,000

3. Future Earnings: $2,450,000

4. 403b/Retirement(losses): $500,000

5. Benefits(medical): $468,000

6. Arbitration Expenses:  $10,000

7. Positive Letter of Recommendation

## VII.    DEMAND FOR JURY TRIAL

Pursuant to Article VII and Civil Rights Article 8, Plaintiff requests a trial by jury.

/
/
/
/
/
/
/
/
/

COMPLAINT

22

This is a case where an accomplished, decent, hard-working and dedicated career woman was treated as though the Fair Employment and Housing Act did not exist. Plaintiff was beat down by sexual harassment and inappropriate behavior that has taken place in the work environment for decades.  Thousands of women have been forced to tolerate said behavior in fear of retaliation, which is a proven FACT. **1 in 4 women report workplace sexual harassment.  Overall, 88% of women have been harassed. Among those who've experienced harassment but did not report it, 4 in 10 were either concerned about the consequences of making a report, or didn't think it would do any good and 56%, think that if they did report harassment it would be handled fairly** *(ABC News/Washington Post Nov. 16, 2011, Exhibit 42).*

Women are forced to tolerate sexual harassment in the workplace everyday, just because they *Tolerate* this behavior, does not mean they *Accept* it!

**Plaintiff was extremely reluctant to report Mr. Garimella's behavior because of retaliation.**

**OneLegacy and Mr. Garimella have a history of violating their own HR policies.**  Example:  HR Policy #103, Employment of Relative, (Exs. 4).  This policy was violated 6 times over and coincidently, OneLegacy has re-aligned their reporting structure of the

COMPLAINT

23

relatives for which were breaking this policy AFTER I brought forth my complaint. (Garimella deposition 39-44, Corliss deposition 20-22, Graciano deposition 13-16, Tr. 2/11 69-70)



   I declare under penalty of perjury under the laws of the State of California that the foregoing information is true and correct



DATED: July 19, 2013      BY: _Tami Dewell James_

                          Tami Dewell James, En Pro Per

COMPLAINT

24

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Gary A. Feess and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV13- 5240 GAF (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

= = = = = = = = = = = = = = = = = - = = = = = = =

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [_] **Southern Division** | [_] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☒ )

Tami Dewell James, En Pro Se
17639 Crabapple Way    Carson, CA 90746
310-962-1711

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

OneLegacy
221 South Figueroa St.
Suite 500
Los Angeles, CA 90012

**(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)**

Tami Dewell James
17639 Crabapple Way
Carson, CA 90746
310-962-1711 cell / 310-603-9653 fax

**(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)**

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1. U.S. Government Plaintiff
☐ 2. U.S. Government Defendant
☐ 3. Federal Question (U.S. Government Not a Party)
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No    (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT: $** 9 Million

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
I believe I was wrongfully terminated, I was discriminated against due to my sex(female) & race(white) and in retaliation for complaining about a protected activity in violation of Title VII of Civil Rights Act of 1964(sexual harassment), US Code Section 1981, US Const. XIV, Fair Employment Housing Act (FEHA), Human Rights Article 5 & 8

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☒ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☒ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☒ 446 American with Disabilities-Other | ☒ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY: Case Number:**    CV13-5240

**AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.**

CV-71 (02/13)    CIVIL COVER SHEET    Page 1 of 2

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
#### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO   ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
**Note:** In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** *Tara Dawett Janes*   DATE: July 19, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

**Key to Statistical codes relating to Social Security Cases:**

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |